■ MARY C. BAKER, Appellant, v DANIEL C. BAKER, III, Respondent.—Order, Supreme Court, New York County (Walter M. Schackman, J.), entered December 2, 1985, which, *inter alia,* awarded plaintiff temporary maintenance of $400 per week, temporary child support of $200 per week, interim counsel fees of $5,000 and interim accountant's fees of $2,500 and denied plaintiff exclusive occupancy of the marital residence, unanimously modified, on the law, on the facts, and in the exercise of discretion, to increase the temporary maintenance to $1,500 per week and the interim accountant's fee to $12,500, and otherwise affirmed, with costs.

The parties were married on February 9, 1974. There are two children of the marriage, both sons, ages 7 and 5. Plaintiff, who is 35 years old, is unemployed. Defendant, 42, is a prominent plastic and reconstructive surgeon, with a highly lucrative medical practice. His professional corporation, bearing his name, grossed in excess of $1,000,000 for the fiscal year ending October 31, 1983, as reflected in the corporate income tax return. The parties' joint income tax return for the calendar year 1983 reports defendant's net earned income to be in excess of $638,000. It is conceded that his personal income for 1984 was in excess of $1,000,000 and that he also received $84,000 from his professional corporation as rent for the ground floor suite of offices in a cooperative residential building at 630 Park Avenue, which he individually owns and leases to the corporation. It is also claimed that defendant had other sources of income related to his medical practice: (1) from an alleged division of funds to a wholly owned foundation, the Reconstructive Surgery Foundation; (2) $38,184, which defendant receives, annually, from Dr. John Conley, plaintiff's father, attributable to defendant's prior association with Conley's medical practice; and, (3) deferred income in the form of contributions to a pension plan, which is included in his net worth statement as having an equity in excess of $285,000.

It appears clear from the record that, prior to the commencement of this divorce action on June 10, 1985, the parties had lived in a very unrestrained and extravagant manner. Defendant had regularly given plaintiff $25,000 to $30,000 monthly for domestic salaries and household needs for their 10-room New York City apartment at the Beresford, 211

Central Park West. The apartment, purchased in 1980 for $385,000, is alleged to be worth more than $2 million. In addition, for several years, they had vacationed at their multi-acre summer estate, a 24-room mansion in Southampton. Their life-style was ordinary and pure luxury, which included the finest private schools, unrestricted charge accounts and credit cards and lavish expenditures for the finest restaurants, the summer estate, two beach and country clubs and vacations. Plaintiff claims that, in 1984, they expended $100,000 to furnish the apartment and the summer estate over $175,000 for household and living expenses for the apartment and about $260,000 to maintain the estate and for country clubs and vacations. It is undisputed that the parties' accumulation of wealth occurred during the marriage. Defendant's net worth, exclusive of his medical practice (which plaintiff estimates to be worth $3 million) is claimed to be in excess of $4 million.

Under the circumstances, in view of the extraordinary income and assets of the defendant, the lavish standard of living of the parties, and aware of the other household and maintenance expense items paid by the husband, we find the award of temporary maintenance grossly inadequate. Accordingly, we increase the interim maintenance award to $1,500 per week. In doing so, we have considered the various factors enumerated in Domestic Relations Law § 236 (B) (6), namely, the respective incomes and financial situations of the parties, their ages, health, the duration of the marriage, the present and future capacity of the plaintiff to be self-supporting, the standard of living during the marriage and the tax consequences to the parties (see, Capasso v Capasso, 99 AD2d 938; Berley v Berley, 97 AD2d 726; Krivitzky v Krivitzky, 94 AD2d 655).

In so deciding, we have also noted the great disparity which exists in the relative financial positions of the parties and the fact that defendant's financial statement grossly understates his income in relation to his expenses. The "net worth statement" lists his income in monthly amounts and, in claiming a total net income of $25,569, improperly offsets certain deductions on an annual basis. Plainly, the statement is significantly inaccurate and a grave undervaluation and misrepresentation of defendant's financial position. On this record, we cannot ascertain the full extent to which it may have misled Special Term in its decision as to the amount of temporary maintenance.

We are mindful that, generally, any inequity in terms of a

temporary maintenance award "is to be remedied by a speedy trial, where the true facts concerning the finances and standard of living of the parties can more accurately be ascertained" *(Rappeport v Rappeport,* 46 AD2d 756, 757; *see also, Capasso v Capasso, supra; Macken v Macken,* 63 AD2d 874; *Gross v Gross,* 44 AD2d 806). Nevertheless, under the circumstances of this case, especially defendant's presentation which illustrates the gross disparity in finances and the patent falsity of his net worth statement, an upward modification of interim maintenance is warranted.

An upward modification in the award for interim accountant's fees is also justified on this record. The services of accountants will clearly be required on the determination of equitable distribution, specifically, as to the value of defendant's several business interests, his medical practice, professional corporation and real estate holdings, as well as the unraveling of his extensive program of tax shelter investments and similar expenses. These complex issues undoubtedly mandate the retention of highly qualified accountants as experts in a laborious project. The relative circumstances of the parties justify an award for such fees under Domestic Relations Law § 237 (c) *(Ahern v Ahern,* 94 AD2d 53, 57-58; *see also, Pacheco v Pacheco,* 107 AD2d 741; *Lobatto v Lobatto,* 102 AD2d 728). In our view, an award of $12,500 in interim accountant's fees is proper here *(compare, Ganin v Ganin,* 114 AD2d 883).

We have examined the remaining contentions advanced by appellant and find them lacking in merit. Concur—Kupferman, J. P., Carro, Fein, Kassal and Ellerin, JJ.