■ RANDI LEWIS, Respondent, v ROBERT H. LEWIS, Appellant. — Order entered April 12, 1983 in Supreme Court, New York County (H. W. Gabel, J.), which, *inter alia,* granted plaintiff's motion for *pendente lite* relief to the extent of awarding her $500 per week temporary maintenance, is modified, on the law and the facts and in the exercise of discretion, to the extent of reducing the temporary maintenance award to $300 per week, and the order is otherwise affirmed, without costs. ¶ This court has held inapplicable to temporary maintenance awards the requirement of section 236 (part B, subd 6) of the Domestic Relations Law that the court shall consider and set forth the factors it considered. (*Berley v Berley,* 97 AD2d 726.) However, the relevant factors sufficiently appear from the record and are recited in this memorandum and supplemented by the additional factual detail in the dissent. (Cf. *Duffy v Duffy,* 94 AD2d 711, 712.) ¶ Defendant husband is extremely well off and both parties have enjoyed a sumptuous life-style since their marriage in 1978. Prior to that plaintiff wife earned approximately $200 per week in the jewelry business, and she has a bachelor's degree from Lehman College. The wife is now about 29 years old. She is clearly employable, although she has not had a job since she wed. Further, the marriage was of short duration — 3½ years — and plaintiff, like defendant, is in good health. With no issue of the union there is no reason why plaintiff wife should not return to the work force. She has apparently made no effort to do so. ¶ She is now living in a style which clearly exceeds her admitted income. There is no showing of a need for temporary maintenance as high as $500 per week. On all the facts we think a reduction of this award by the $200 per week that she clearly seems capable of earning will still result in an adequate temporary maintenance provision. ¶ Nothing herein shall require the wife to repay to the husband any amounts of temporary maintenance already actually collected, or to credit such previous actual collections against unpaid maintenance for later periods. ¶ Of course, none of these observations are meant as any assessment of what amount, if any, should be awarded as permanent maintenance. Concur — Sandler, J. P., Sullivan and Silverman, JJ.

Carro and Milonas, JJ., dissent in a memorandum by Milonas, J., as follows: I disagree with the majority's conclusion that Special Term abused its discretion in awarding plaintiff the sum of $500 in temporary maintenance. ¶ The husband and wife herein were married on July 16, 1978 and separated in January of 1982, some three and one-half years later. At the time of the marriage, the wife was 23 years of age and the husband was 31. The couple have no children. The husband, a man of substantial resources and wealth, is president of a moving and storage company and has other diversified business interests. He admits to an annual income in excess of $170,000, to total assets over one million dollars and to a net worth of more than $800,000. In addition to his annual earnings, he owns Treasury Bills having a value of $65,000. The husband's various business operations provide him with the expense-paid use of Ferrari and Jaguar motor vehicles, an American Express credit card, extensive travel perquisites and the incidental costs thereof, and the summer rentals of houses in Westhampton and Amagansett, Long Island. ¶ During the period of the marriage, the husband rented a marital apartment at 800 Fifth Avenue in New York County at a monthly rental of $2,700, which cost, together with the utility and telephone expenses of this abode, was paid through the husband's business operations. Substantial sums of money were spent by the defendant for clothing, expensive jewelry, a fur coat for the wife and apartment decorations and furnishings. The husband also paid approximately $9,000 for the college tuition of the plaintiff's brother. He gave his wife about $300 each week to cover ordinary daily household and other expenses. The couple took extensive and luxurious vacations, both in and outside the United States, prior to and during their marriage. ¶ Before the marriage, the

wife, who has a college degree, was employed as a jewelry designer and salesperson at a weekly salary of about $200. Except for a brief period, the wife was a homemaker during the term of the marriage, and she is not currently working. Following the couple's separation, defendant canceled all of his wife's credit and banking privileges. Although he continued to support her sporadically for some months thereafter, by July of 1982 he had ceased to make any payments whatever, and the wife was evicted from the apartment which she had once shared with defendant. She presently resides in a two-bedroom apartment sublet from a friend at a monthly rental of $1,000. The husband has accused his wife of adultery; the wife has accused the husband of having an expensive cocaine habit. These charges and countercharges remain unresolved. The wife's current assets consist largely of jewelry and a fur coat purchased for her by the husband and having an estimated value of $50,500. She also sold three bearer bonds for $9,000, and it is a matter of dispute between the pair whether she did so with or without her husband's permission. ¶ Plaintiff commenced the instant action for divorce in October of 1982 and was granted temporary maintenance in the sum of $500 retroactive to the original return date of the motion. The husband, who has repeatedly fallen into arrears in his payments, now appeals Special Term's award of temporary maintenance as grossly excessive. The majority apparently agrees. However, while it is true that the marriage involved here was of a relatively short duration, that there are no issues of that marriage, and the wife is a young woman with some earning capacity, the fact is that $500 a week, or $2,000 a month, is scarcely an exorbitant sum of money. This is particularly the situation in view of the defendant's acknowledged wealth, the substantial lifestyle maintained by the parties during the course of their marriage and continued to be enjoyed by the husband, as well as today's high cost of living. ¶ Defendant contends that Special Term was required by section 236 (part B, subd 6) of the Domestic Relations Law to specify the factors which it considered in reaching its award of temporary maintenance. In this connection, defendant completely ignores this court's recent holding in *Berley v Berley* (97 AD2d 726, 727), wherein it was stated that "paragraph a of subdivision 6 of the statute directs the court to consider the nine factors enumerated in the statute in determining 'the amount and duration of maintenance' but does not mandate that those factors be taken into account and set forth in the decision fixing temporary maintenance" (see, also, *Krivitzky v Krivitzky,* 94 AD2d 655; *Liss v Liss,* 87 AD2d 681). Thus, there was no obligation upon Special Term to consider the statutory criteria nor to list those that it did take into account, although the court could, of course, do so if it wished. (*Berley v Berley, supra.*) ¶ Considering the respective income, assets and reasonable needs of the parties, Special Term clearly did not abuse its discretion. Moreover, there is ample authority that the appropriate manner in which to resolve any alleged inequities in the award is by an expeditious trial. (*McKee v McKee,* 96 AD2d 531; *Beckwith v Beckwith,* 95 AD2d 943; *Rossman v Rossman,* 91 AD2d 1036; *Jorgensen v Jorgensen,* 86 AD2d 861.) Consequently, the position taken by the majority is simply inconsistent with the general practice of the courts in this State. In my opinion, there is no valid basis for a modification of Special Term's order.

